RANDOLFO MARTY PÉREZ, demandante y apelado, *v.* TEMÍSTOCLES RAMÍREZ CUERDA, demandado y apelante.

Núm. 10550.—*Sometido:* Febrero 1, 1952. *Resuelto:* Febrero 26, 1952.

*Martín Avilés Bracero* y *Manuel Janer Mendía,* abogados del apelante; *José Castro Figueroa,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

La única cuestión a ser determinada en este caso es si el tribunal inferior actuó acertadamente o no al decretar el aseguramiento de la sentencia que en su día pudiera dictarse sin previa prestación de fianza por el demandante. Veamos: Allá para el 16 de septiembre de 1949 el demandante y el demandado suscribieron ante notario público un documento que intitularon "Contrato Extrajudicial de Ratificación de Cesión y Traspaso de Derechos en Sociedad y Reconocimiento de Deuda", e hicieron constar en el mismo lo siguiente:

"Primero: Que en el mes de octubre de 1947 los comparecientes acordaron la constitución de una sociedad para el establecimiento y funcionamiento de un Hospital, y en el mes de febrero de 1948 formalmente constituyeron la sociedad para el establecimiento de un Hospital y al efecto establecieron el Hospital conocido por 'Hospital Sagrado Corazón' que desde entonces ha venido radicado y funcionando en la casa marcada con el número 1408 de la Avenida Ponce de León, Parada 21, de Santurce, Puerto Rico;

"Segundo: Que don Temístocles J. Ramírez Cuerda, reconoce en este acto y así lo expone don Randolfo Marty Pérez que este último aportó a dicha Sociedad para el establecimiento y funcionamiento del 'Hospital Sagrado Corazón' la cantidad de Diez Mil Trescientos Cuarenta y Dos Dólares ($10,342), moneda legal de los Estados Unidos de América;

"Tercero: Que el susodicho Hospital ha sido debidamente equipado con camas, muebles y demás enseres y efectos propios de un Hospital de su clase para cuyo objeto se empleó tanto el capital aportado por el Doctor Randolfo Marty Pérez como el aportado por el Doctor T. J. Ramírez Cuerda;

"Cuarto: Que en el mes de mayo de 1948 fué convenido entre los comparecientes la disolución de dicha Sociedad y así fué disuelta en esa misma fecha bajo condición de que el Doctor Marty Pérez habría de conservar una oficina profesional en el mismo Hospital para la atención de sus pacientes particulares, sin costo alguno, y así mismo fué convenido que todo producto

por concepto de hospitalización de esos mismos pacientes sería abonado al Dr. Marty Pérez en pago parcial de su crédito ascendente al importe por él contribuído para el establecimiento y funcionamiento del Hospital Sagrado Corazón;

"Quinto: Finalmente exponen los comparecientes que desde el mes de mayo de 1948 en que quedara disuelto, el convenio habido entre ambos ha venido funcionando en todas sus partes, apareciendo desde entonces el Doctor T. J. Ramírez Cuerda cómo único dueño del 'Hospital Sagrado Corazón' y reconociendo éste a su vez que el Doctor R. Marty Pérez, por su parte, que desde dicha fecha todos sus derechos y acciones han venido cedidos y traspasados a favor del otro compareciente.

"Deseando ahora los comparecientes ratificar dicha disolución de sociedad, reconocer y ratificar la cesión y traspaso de los derechos y acciones consiguientes, el reconocimiento formal de la deuda según ha quedado reducida hasta esta fecha, y las demás condiciones y estipulaciones del contrato, todo lo llevan a cabo por medio del presente documento y bajo las cláusulas siguientes:

"Primera: Los comparecientes expresamente ratifican la disolución de la Sociedad por ellos constituída para el establecimiento, equipo y funcionamiento del 'Hospital Sagrado Corazón', en mayo de 1948, y el Doctor Randolfo Marty ratifica la cesión y traspaso de todos sus derechos y acciones sobre el susodicho Hospital a favor del Doctor Temístocles J. Ramírez Cuerda, y a mayor abundamiento por la presente *Cede y Traspasa* todo derecho y acción y todo condominio que pueda tener y tenga sobre el 'Hospital Sagrado Corazón' a favor del Doctor T. J. Ramírez Cuerda.

"Segunda: Los otorgantes reconocen expresamente que dicha cesión y traspaso se hizo por el convenido precio de Diez Mil Trescientos Cuarenta y Dos Dólares ($10,342), moneda legal de los Estados Unidos de América, o sea el importe de su aportación del Dr. Marty Pérez para el establecimiento, equipo y funcionamiento del susodicho hospital.

"Tercera: El Doctor Randolfo Marty Pérez reconoce expresamente que hasta esta fecha y por concepto del producto de hospitalización de sus pacientes particulares y privados en dicho Hospital tiene recibida la cantidad de Un Mil Cincuenta y Un Dólares ($1,051), quedando así reducida la deuda a la cantidad de Nueve Mil Doscientos Noventa y Un dólares ($9,291); y el Dr. Ramírez Cuerda expresamente reconoce y confiesa que viene

adeudando y adeuda hasta esta fecha y por el concepto .expresado, o sea por el precio de venta de una participación en el Hospital Sagrado Corazón, al Doctor Marty Pérez la indicada cantidad de Nueve Mil Doscientos Noventa y Un dólares ($9,291), moneda legal de los Estados Unidos de América.

"Cuarta: Como parte del convenio al disolverse la Sociedad, queda convenido que el Dr. Marty Pérez tendrá derecho a seguir ocupando una oficina en el propio local de dicho Hospital para atender a sus pacientes privados y particulares, y por su parte el Doctor Ramírez Cuerda se obliga a seguir abonando al Doctor Marty Pérez todo el producto que por concepto de hospitalización rindan dichos pacientes privados o particulares del Doctor Marty Pérez en dicho Hospital Sagrado Corazón.

"Quinta: Queda asimismo convenido que · dicha deuda de $9,291 será cubierta en la forma que fuere convenida mientras continúe el funcionamiento del susodicho Hospital Sagrado Corazón, pero queda convenido y estipulado que en caso de que dicho Hospital fuere cerrado y descontinuado su funcionamiento, el importe de la deuda que a dicha fecha exista a favor del Doctor Marty Pérez en virtud de esta Cesión y Traspaso será considerado como crédito preferente sobre toda otra deuda, y todo el equipo, muebles, camas y enseres del mismo responderán en primer término al pago del remanente que se adeudare de la presente deuda o sea .de la liquidación que resulte después de abonar todo el producto de hospitalización que hubiere pendiente de liquidación a la fecha del cierre o cese del funcionamiento del Hospital.

"Sexta: Mientras dure este contrato o sea hasta el pago total de·la deuda, el Doctor Marty Pérez tendrá derecho al uso de su oficina en, el local ocupado en el Hospital sin pago de canon o merced alguna, siendo ésta una de las condiciones principales establecidas al hacerse dicha disolución de sociedad y cesión y traspaso de participación, y siendo asimismo ésta la razón por la cual el compareciente Dr. Marty Pérez no tendrá derecho al cobro de intereses sobre la deuda.

"Séptima: Si por convenio de las partes el Doctor Marty Pérez trasladara su oficina del local indicado, entonces la deuda habrá de devengar intereses desde la fecha en que dicho compareciente dejare de recibir los beneficios de la misma en la forma estipulada, y de ocurrir tal situación entonces éste no vendría obligado a hospitalizar sus pacientes privados en dicho

Hospital en cuyo caso se fijaría por escrito la forma, término y condiciones para el pago del resto de la deuda, fijándose desde ahora un tipo de intereses del seis por ciento (6%) anual para ser en dicho caso. (sic).

"Octava: Las partes se obligan a un estricto cumplimiento de este contrato en todas sus partes y en caso de acción judicial la parte perdidosa responderá de las costas, gastos y honorarios de abogado que origine a la otra parte.

"Y para que este contrato tenga toda la fuerza y validez que en derecho corresponda, de acuerdo con nuestros deseos, suscribimos y reconocemos el mismo, ante notario, hoy, en San Juan, Puerto Rico, a los 16 días del mes de septiembre de 1949."

Fundado en ese documento, el 4 de abril de 1951 el demandante instó demanda en la que, luego de hacer referencia al contrato antes descrito, alegó que en éste el demandado reconocía una deuda de dinero a su favor por la suma de $9,291, la cual le iría pagando el demandado permitiendo que él hospitalizara los pacientes privados de aquél en la Clínica Sagrado Corazón, abonándose a la deuda el costo de tal hospitalización; que "hasta la fecha el demandado ha abonado al demandante por concepto de hospitalización la cantidad de $4,199 y le queda a deber la cantidad de $5,092; que el demandado se retiró del hospital Sagrado Corazón, cerró dicho hospital y le manifestó al demandante que no podía seguir pagando ni abonando cantidad alguna a la deuda contraída, por haber cerrado el hospital Sagrado Corazón desde el día 31 de marzo de 1951"; que el demandado le adeuda los referidos $5,092, cuyo pago él le ha requerido, sin éxito, en repetidas ocasiones. Solicita sentencia por la aludida cantidad, con costas, intereses y honorarios de abogado.

Decretado a instancias del demandante mandamiento de embargo sin prestación de fianza, el demandado, luego de contestar negando los hechos esenciales de la demanda, pidió del tribunal a quo que dejara sin efecto el embargo trabado. Dicho tribunal se negó a ello, citando los casos de *Avalo* v. *Porrata*, 19 D.P.R. 20 y *Fabelo* v. *Quintana*, 47 D.P.R. 72. Solicitada reconsideración la misma fué denegada.

■■ Alega ahora el demandado que el tribunal inferior erró al decretar el aseguramiento sin exigir fianza al demandante. Aunque de acuerdo con la sección 4 de la Ley para Asegurar la Efectividad de Sentencias (Estatutos Revisados de 1911, pág. 884, sección 5236) "Si consta claramente en documento auténtico que la obligación es exigible, el tribunal decretará el aseguramiento sin fianza",(¹) esta corte ha decidido reiteradamente que no obstante lo dispuesto por esa ley "para que pueda decretarse un embargo sin fianza para aseguramiento de la efectividad de la sentencia, *es necesario que aparezca claramente del documento auténtico que la obligación es exigible, lo que quiere decir, no sólo que los documentos en que se basa la petición sean auténticos, sino también, que fácilmente, sin gran dificultad, pueda el juez venir en conocimiento de que realmente la obligación existe y puede reclamarse.*" (Bastardillas nuestras.) *Avalo* v. *Porrata*, 19 D.P.R. 20; *Polanco* v. *Goffinet*, 26 D.P.R. 323; *Roig* v. *Landráu*, 29 D.P.R. 315; *Pérez* v. *The National Surety Co.*, 53 D.P.R. 501.

Es innegable que en el caso de autos era auténtico el documento que sirvió de base a la demanda presentada. Empero, eso no basta. Aunque de la faz de la demanda se desprende que el demandado en documento auténtico reconocía una deuda de $9,291 en favor del demandante, sin embargo, de ella se desprende asimismo que dicha deuda se iría pagando mediante la hospitalización por el demandante de sus pacientes en la clínica Sagrado Corazón. Por tanto, se requería prueba para fijar el monto exacto de la deuda, si es que ésta existía. En su consecuencia, el presente es un caso en que el juzgador no venía fácilmente en conocimiento de que la obligación realmente existía y podía reclamarse. No debió, por ende, decretarse el aseguramiento relevando al de-

---

(¹) En la sección 4 de la ley, después de hacerse constar las palabras que entre comillas hemos copiado más arriba se dice que: "En cualquier caso se exigirá fianza para decretarlo."

mandante de prestar la fianza requerida por la propia sección 4 de la ley antes citada.

El caso de *Avalo* v. *Porrata,* supra, como hemos visto, resulta ser adverso a la conclusión a. que llegó. el tribunal inferior, y el de *Fabelo* v. *Quintana,* supra, es claramente distinguible, toda vez que la demanda en él instada se basó en una sentencia previamente dictada a favor de la parte demandante, y por disposición expresa de la sección 3 de la aludida ley, según fué enmendada por la núm. 27 de 13 de abril de 1916 (pág. 79) "Si el aseguramiento se solicitare después de pronunciada sentencia no se exigirá fianza." (²)

*Debe revocarse la resolución apelada y devolverse el caso al tribunal inferior para ulteriores procedimientos.*

---

(²) Véase la discusión que del caso de *Fabelo* v. *Quintana,* supra, se hace en el de *Pérez* v. *The National Surety Co.,* a la pág. 504 del tomo 53 de las decisiones de este Tribunal, así como el caso de *Boyrié* v. *Mariño,* 58 D.P.R. 285.