EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Vecinos de Villa Caparra Sur, Inc., así como Henry W. Schettini Gutiérrez, su Presidente<br><br>          Peticionarios<br><br>                v.<br><br>Asociación de Fomento Educativo, Inc., t/c/c Association for Educational Development, Inc.<br><br>          Recurridos<br><br>                v.<br><br>Municipio Autónomo de Guaynabo p/c/d su Alcalde, el Hon. Héctor O´Neill García<br><br>Parte Demandante No Recurrida<br><br>                v.<br><br>César T. Andréu Megwinoff; Blas R. Ferraiuoli Martínez; y Otros<br><br>Peticionarios-Terceros Demandados | Certiorari<br><br>2007 TSPR 203<br><br>172 DPR \_\_\_\_ |

Número del Caso: CC-2006-1063

Fecha: 20 de noviembre de 2007

Tribunal de Apelaciones:

          Región Judicial de Bayamón, Panel VI

Juez Ponente:

          Hon. Carlos Rodríguez Muñiz

Abogados de la Parte Peticionaria:

> Lcdo. César Andréu Megwinoff
> Lcdo. Francisco J. Andréu Ramírez de Arellano
> Lcda. Marcelle D. Martell-Jovet
> Lcdo. Blas Ferraiuoli Martínez
> Lcdo. Herman Colberg
> Lcdo. José Otero Matos

Abogados de la Parte Recurrida:

> Lcda. Delia Cabán Dávila
> Lcdo. Andrés W. López
> Lcdo. Rafael Alonso Alonso

Materia: Acción Civil Injunction

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Vecinos de Villa Caparra Sur, Inc., así como Henry W. Schettini Gutiérrez, su Presidente<br>    Peticionarios<br><br>       v.<br><br>Asociación de Fomento Educativo, Inc., t/c/c Association for Educational Development, Inc.<br>    Recurridos<br><br>       v.<br><br>Municipio Autónomo de Guaynabo p/c/d su Alcalde, el Hon. Héctor O'Neill García<br>Parte Demandante No Recurrida<br><br>       v.<br><br>César T. Andréu Megwinoff; Blas R. Ferraiuoli Martínez; y otros<br>Peticionarios-Terceros Demandados | CC-2006-1063 |

SENTENCIA

San Juan, Puerto Rico, a 20 de noviembre de 2007

El 22 de noviembre de 2006 la parte peticionaria, Asociación de Vecinos de Villa Caparra, presentó ante nuestra consideración una moción en auxilio de jurisdicción y un recurso de *certiorari.* El 5 de diciembre de 2006 denegamos

ambas peticiones. El 26 de enero de 2007, en reconsideración, emitimos una orden de mostrar causa a la parte recurrida para que expresara las razones por las cuales no debíamos expedir el auto y revocar la sentencia del Tribunal de Apelaciones que dejó sin efecto la orden de *injunction* preliminar que paralizó las obras de construcción realizadas por la parte recurrida mientras se dilucida si la construcción viola las servidumbres en equidad que gravan la propiedad en controversia. El Tribunal de Apelaciones entendió que el Tribunal de Primera Instancia violó el derecho de la recurrida al debido proceso de ley al no permitirle presentar cierta prueba en la vista de *injunction*. Por tanto, concluyó que no se podía mantener la orden de *injunction* preliminar y lo dejó sin efecto. En auxilio de nuestra jurisdicción, paralizamos las obras de construcción realizadas por la parte recurrida.

Con el beneficio de la comparecencia de las partes, se expide el auto y por estar igualmente dividido el Tribunal se confirma la sentencia del Tribunal de Apelaciones y se deja sin efecto la paralización provisional de las obras de construcción.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Presidente señor Hernández Denton emitió opinión de conformidad a la cual se le unen los Jueces Asociados señor Fuster Berlingeri y señor Rivera Pérez. La Juez Asociada señora Rodríguez Rodríguez emitió opinión disidente a la cual se le une el

Juez Asociado señor Rebollo López.  La Jueza Asociada señora Fiol Matta emitió opinión disidente.


                         Dimarie Alicea Lozada
                  Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Asociación de Vecinos de Villa Caparra Sur, Inc., así como Henry W. Schettini Gutiérrez, su Presidente | * | |
| Peticionarios | * | |
| v. | * | CC-2006-1063 |
| Asociación de Fomento Educativo, Inc., t/c/c Association for Educational Development, Inc. | * | |
| Recurridos | * | |
| v. | * | Certiorari |
| Municipio Autónomo de Guaynabo p/c/d su Alcalde, el Hon. Héctor O´Neill García | * | |
| Parte Demandante No Recurrida | * | |
| v. | * | |
| César T. Andréu Megwinoff; Blas R. Ferraiuoli Martínez; y otros | * | |
| Peticionarios-Terceros Demandados | * | |

*********************************

Opinión de Conformidad emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON, a la cual se unen los Jueces Asociados SEÑORES FUSTER BERLINGERI Y RIVERA PÉREZ

San Juan, Puerto Rico, a 20 de noviembre de 2007.

Estamos conformes de que procede confirmar la sentencia recurrida del Tribunal de Apelaciones. Sin embargo, consideramos necesario expresarnos de forma particular para hacer constar claramente nuestra posición al respecto. Entendemos que el foro de instancia incidió al expedir la orden de *injunction* preliminar, sin requerir el

pago de la fianza correspondiente conforme a la Regla 57.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 57.3. Por otro lado, consideramos que -aun si procediera eximir la prestación de fianza previa bajo una de las excepciones enumeradas en la Regla 56.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.3- el foro de instancia abusó de su discreción al conceder un remedio provisional que afectaría el derecho propietario de los demandados sin celebrar una vista plenamente evidenciaria conforme al debido proceso de ley.

## I.

La Asociación de Fomento Educativo (en adelante, AFE) es dueña desde el año 1983 de un solar ubicado en la Urbanización Villa Caparra Sur, el cual está sujeto a ciertas condiciones restrictivas sobre edificación y uso. Esta servidumbre en equidad fue constituida mediante escritura pública debidamente inscrita en el Registro de la Propiedad. Para el año 2005, la AFE demolió la estructura existente en dicho solar con el propósito de realizar la construcción de una nueva edificación. Esta obra se inició con el correspondiente permiso de construcción expedido por la Oficina de Permisos Urbanísticos del Municipio de Guaynabo.

Ante esa situación, la Asociación de Vecinos de Villa Caparra (en adelante, la Asociación de Vecinos) presentó una demanda alegando varias violaciones a las condiciones restrictivas mencionadas y solicitando que se emitiera un

*injunction* preliminar y permanente para paralizar la construcción. En respuesta a la solicitud, el tribunal de instancia fijó una vista argumentativa en la cual las partes tuvieron la oportunidad de exponer sus argumentos y presentar cierta prueba documental. No obstante, el foro de instancia no permitió que se presentara evidencia testifical, a pesar de que hubo varios ofrecimientos a tales efectos.

Posteriormente, el foro de instancia emitió la orden de *injunction* preliminar y eximió a la Asociación de Vecinos del pago de la correspondiente fianza. En vista de ello, ordenó la paralización inmediata de la obra de construcción en controversia. Inconforme con dicho dictamen, la AFE impugnó la determinación alegando que la orden de paralización de la obra se emitió en violación al debido proceso de ley y que no se cumplieron con los requisitos para la concesión de un *injunction* preliminar.

El Tribunal de Apelaciones revocó la determinación del tribunal de instancia por entender que procedía celebrar una vista evidenciaria en la que las partes pudieran presentar evidencia documental y testifical. A pesar de que el foro recurrido llegó a esta conclusión sin considerar si procedía eximir a los demandantes de la prestación de la fianza correspondiente, estamos conformes con el resultado de la misma. No obstante lo anterior, entendemos pertinente atender de forma particular este asunto medular para que conste claramente nuestra posición al respecto.

II.

A.

Al examinar el caso de autos, partimos de la premisa de que, como norma general, la concesión de un *injunction* preliminar depende de que el promovente preste fianza previa. A esos efectos, las Reglas de Procedimiento Civil disponen que **no se dictará ninguna orden de *injunction* preliminar ni de entredicho provisional si no se presta una fianza** por la cantidad que el tribunal considere justa para el pago de las costas y daños en que pueda incurrir o que haya sufrido cualquier parte que haya resultado indebidamente puesta en entredicho o restringida. Regla 57.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.57.3. La fianza que se exige como requisito para dictar una orden de *injunction* preliminar o entredicho provisional cubre sólo las costas y daños incurridos que son consecuencia del mismo. Marbarak v. Tribunal Superior, 93 D.P.R. 474 (1966); Avalo v. Cacho, 73 D.P.R. 286, 292 (1952).

Dicha norma —establecida en la Regla 57.3 de Procedimiento Civil, *supra*— **aplica de manera específica al *injunction* preliminar** y a la orden de entredicho provisional. Según lo dispuesto por esta regla, el tribunal tiene discreción para fijar la cuantía de la fianza correspondiente, a base de los daños que pueda sufrir y las costas en que pueda incurrir el promovido durante la vigencia del *injunction* preliminar o el entredicho provisional solicitado. El propósito de la

referida regla es proveerle al demandante un remedio provisional inmediato mientras se protege al demandado en caso de que eventualmente se determine que dicha parte fue indebidamente restringida o puesta en entredicho. En atención a ello, es necesario que el tribunal establezca previamente un balance adecuado entre las posibilidades de triunfo del demandante y las probabilidades de que el remedio resulte improcedente o se causen daños que no puedan recobrarse.

La prestación de fianza previa en estos casos es precisa, pues existe mayor probabilidad de que el foro de instancia se equivoque al expedir un remedio provisional para tales efectos sin antes profundizar sobre los méritos de la controversia tras la celebración de un juicio en su fondo. Por tanto, la imposición de una fianza previa al conceder un remedio extraordinario bajo la Regla 57.3 de Procedimiento Civil, *supra*, constituye un requisito esencial que no debe ceder ante ningún supuesto, salvo circunstancias extraordinarias en donde requerir tal prestación conllevaría un fracaso de la justicia. *Véase* J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, a las págs. 1062-1063.

Las disposiciones de la referida regla son análogas a la Regla 65(c) de Procedimiento Civil Federal, la cual expresa que

> No restraining order or preliminary injunction shall issue **except upon the giving of security by the applicant,** in such sum as the court deems proper, for the

> payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Fed.Rules Civ. Proc. Rule 65, 28 U.S.C.A. (énfasis suplido).

Al interpretar esta regla, los tribunales han afirmado que el no imponer fianza previa constituye un error reversible que invalida la orden de *injunction* preliminar originalmente emitida por el foro de instancia. Véase District 17, United Mine Workers of America v. A & M Trucking, Inc., 991 F.2d 108, (4th Cir. 1993); Frank's GMC Truck Ctr., Inc. v. General Motors Corp., 847 F.2d 100 (3d Cir.1988). Véase además Wright, Miller & Kane, Federal Practice and Procedure, § 2954, a la pág. 288 (2007).

De hecho, la mayoría de los circuitos federales reconocen que la fianza previa a la concesión de un *injunction* preliminar es obligatoria y que el lenguaje de la referida disposición, en general, no admite excepción alguna. Los foros de instancia sólo tienen discreción para fijar la cuantía de dicha fianza y para reducir la misma a una cuantía nominal en supuestos excepcionales. Otros circuitos han interpretado esta regla para limitar la exención del requisito de prestar fianza previa a demandas de *injunction* preliminar que conlleven un interés público apremiante –como lo sería una causa de acción para vindicar derechos civiles o ambientales–, y en casos de litigantes insolventes. Véanse Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 209-11 (3d Cir. 1990); District 17, United Mine Workers of America v. A & M Trucking, Inc.,*supra*;

<u>Phillips v. Chas. Schreiner Bank</u>, 894 F.2d 127, 130-31 (5th Cir. 1990); <u>Gateway E. Ry. v. Terminal R.R. Ass'n</u>, 35 F.3d 1134, 1141 (7th Cir. 1994). Véanse además, Wright, Miller & Kane, <u>Federal Practice and Procedure</u>, *supra*, a la pág. 287-307(2007.); Note, <u>Security for Interlocutory Injunctions under Rule 65(C): Exceptions to the Rule Gone Awry</u>, 46 HSTLJ 1863 (1995); Note, <u>Recovery for Wrongful Interlocutory Injunctions under Rule 65 (c)</u>, 99 Harv. L. Rev. 828 (1986). Resulta forzoso concluir que, salvo casos excepcionales, una vez se expide un *injunction* al amparo de esta regla, los términos obligatorios de la misma exigen al tribunal la imposición de la fianza correspondiente.

B.

En contravención a dicha normativa, el foro de instancia emitió un *injunction* preliminar –ordenando la paralización de la obra de construcción en controversia– sin requerir a la Asociación de Vecinos la prestación de la fianza correspondiente. Para ello, el tribunal de instancia se amparó erróneamente en las excepciones establecidas por la Regla 56.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.3. La misma es de aplicación en el contexto de los remedios provisionales con motivo del aseguramiento y establece como norma general la obligación de prestar fianza. Sin embargo, permite que –a manera de excepción– se conceda un remedio provisional sin la prestación de fianza en ciertos casos, a saber, cuando apareciere de documentos públicos o privados firmados ante una persona autorizada

para administrar juramento, que la obligación es legalmente exigible; en caso de un litigante indigente; y cuando se gestiona el remedio después de dictada la sentencia.

La Regla 56 de Procedimiento Civil, *supra,* faculta a los tribunales a conceder remedios provisionales tales como el embargo, la prohibición de enajenar, emitir ordenes para hacer o desistir de hacer cualquier acto específico, o para ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. Es en esta regla que se enumeran las excepciones que permiten eximir al promovente de prestar fianza antes de que el tribunal dicte cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia.

No obstante, dichas excepciones no deben aplicarse automáticamente a los supuestos de *injunction* preliminar o entredicho provisional pues, como ya señalamos, las propias Reglas de Procedimiento Civil atienden estos remedios de manera particular y no parecen admitir excepción alguna. Este Tribunal ha esbozado que, en nuestro ordenamiento jurídico, el procedimiento de *injunction* se rige principalmente por la Regla 57 de Procedimiento Civil, *supra*. García v. World Wide Entertainment, 132 D.P.R. 378 (1992). También hemos expresado que "las demás reglas solo aplican [al injunction] de modo supletorio siempre y cuando no desvirtúen el carácter sumario del recurso". Corujo Collazo v. Viera Martínez, 111 D.P.R. 552 (1981). Ciertamente, el requisito de la fianza correspondiente

forma parte integral de la naturaleza sumaria del *injunction*. Por tanto, constituye un error aplicar cualquier otra regla de manera supletoria en el caso de autos, pues dicha acción desvirtúa la regulación específica de la fianza previa instituida por la Regla 57.3 de Procedimiento Civil, *supra*.

A tales efectos, Rafael Hernández Colón comenta en su obra <u>Práctica Jurídica de Puerto Rico: Derecho Procesal Civil</u> que la Regla 57.3 de Procedimiento Civil, *supra*, no trata al *injunction* preliminar como una medida de aseguramiento de sentencia, por lo que "exige que cuando se solicita una orden o *injunction* preliminar, el solicitante tiene que prestar fianza para garantizar los daños y perjuicios que pueda causar. **Esta Regla establece un procedimiento especial para ejecutar la fianza y no está sujeta a las excepciones de la R.56, 1979** [respecto a los remedios provisionales]". R. Hernández Colón, <u>Derecho Procesal Civil</u>, § 1504, a las págs. 159-160 (2007).

Del mismo modo, David Rivé Rivera discute los requisitos para dictar la orden de *injunction* y reconoce que la letra de la Regla 57.3 de Procedimiento Civil, *supra,* parece exigir siempre la prestación de fianza previa. D. Rivé Rivera, <u>Recursos Extraordinarios</u>, a la pág. 33. De hecho, Rivé Rivera propone que consideremos los casos de litigantes indigentes **como la única excepción** al requisito de la prestación de fianza para la concesión de un *injunction* preliminar, al plantear lo siguiente:

"la política pública expresada en nuestras reglas de procedimiento civil apoya la posibilidad que se conceda el remedio provisional de Injunction sin la prestación de fianza **en casos de litigantes insolventes**, cuando a juicio del tribunal aduzcan en su demanda hechos suficientes para establecer una causa de acción cuya probabilidad de triunfo fuere evidente o pudiera demostrarse, y hubiere motivos fundados para temer, previa vista al efecto que de no obtenerse inmediatamente dicho remedio provisional, la sentencia que pudiere obtenerse resultaría académica. D. Rivé Rivera, <u>Recursos Extraordinarios</u>, *supra*, a la pág. 34".

Incluso si incorporáramos dicha formulación normativa, o si adoptáramos cualquiera de las excepciones jurisprudenciales discutidas en relación a la Regla 65(c) de Procedimiento Civil Federal, *supra,* el requisito de la fianza correspondiente aún sería imperativo en las circunstancias ante nuestra consideración. El caso de autos no involucra a litigantes indigentes, ni mucho menos se trata de un supuesto excepcional donde los derechos civiles y constitucionales del demandante se encuentren bajo amenaza por la actuación del promovido. Por tanto, el foro de instancia abusó de su discreción al conceder un *injunction* ordenando la paralización de la construcción sin requerir la prestación de fianza previa.

En discrepancia con nuestro criterio, la compañera Jueza Asociada señora Rodríguez Rodríguez señala que "en ausencia de una justificación adecuada sobre la alegada inaplicabilidad de dicha Regla [56 de Procedimiento Civil] y sobre la supuesta necesidad de que la concesión de un *injunction* preliminar se rija por la Regla 57 de Procedimiento Civil", el foro de instancia actuó

correctamente al otorgar el *injunction* preliminar al amparo de la Regla 56. Op. dis., pág. 23. Esta posición ignora los rasgos y el funcionamiento de la figura del *injunction* en nuestro sistema de derecho, así como su desarrollo histórico. Hace casi medio siglo, la Asamblea Legislativa enmendó, a iniciativa nuestra, las Reglas de Procedimiento Civil de Puerto Rico. Reglas de Procedimiento Civil de 1958, 32 L.P.R.A. Ap. II (derogado). Con dichas enmiendas, pretendimos atender la dicotomía entre la ley y la equidad catalizada por el cambio de soberanía política y la coexistencia de dos sistemas jurídicos con normas procesales disímiles y divergentes.

En atención a lo anterior, el legislador le confirió a los tribunales dos mecanismos paralelos e independientes para implantar su facultad de conceder remedios provisionales. En primer lugar, **las disposiciones estrictas de la Regla 57 le aplican a todo litigante que solicita un *injunction* como remedio principal, las cuales siempre exigen la prestación de fianza para la concesión del mismo** y cuyas órdenes ex parte tienen un término de vigencia máxima de veinte días. Por otro lado, si lo que el demandante solicita es una "orden de no hacer" **como remedio subsidiario**, o cualquier otro remedio provisional en aseguramiento de sentencia a tenor con la Regla 56, la misma puede acogerse a los requisitos más flexibles contenidos en esta última regla, la cual permite emitir dichas órdenes sin fianza y sin límites de tiempo. *Véase* D.

Rivé Rivera, Recursos Extraordinarios, *supra*, a las págs. 1-14.

Es decir, si la solicitud del remedio se plantea en una demanda cuyo objeto principal es el *injunction* mismo, rige la Regla 57 de forma expresa y específica. A su vez, si se solicita una orden de hacer o no hacer como remedio supletorio para asegurar la sentencia, en el contexto de un pleito cuyo objeto principal no es la concesión de un *injunction*, se pueden aplicar las disposiciones más flexibles de la Regla 56. R. Hernández Colón, Derecho Procesal Civil, *supra,* §. 5704, a la pág. 464. Por tanto, la concesión del remedio provisional correspondiente depende del objetivo principal de la demanda, que a su vez tiene que ceñirse a la regla procesal aplicable. De lo contrario, se estaría dejando al arbitrio del juzgador la aplicación de cualquiera de las dos reglas, a pesar de que el legislador expresamente vislumbró una clara distinción entre ambas normativas procesales.

En el caso de autos, la Asociación de Vecinos solicitó en todo momento un *injunction* preliminar, que en su día fue otorgado por el foro de instancia. El objeto principal de la demanda ante nuestra consideración es, precisamente, la expedición de un *injunction* para paralizar la construcción y ordenar la demolición de la estructura en controversia. Por tanto, resulta necesario concluir que el tribunal de instancia abusó de su discreción al conceder dicho remedio al amparo de la Regla 56 de Procedimiento Civil, *supra*,

obviando por completo las disposiciones comprendidas en la Regla 57 que atienden específicamente las circunstancias de este caso. No se trata, como arguye la compañera Jueza Asociada señora Rodríguez Rodríguez en su opinión disidente, de eviscerar de contenido la Regla 56, sino de limitar su alcance a los remedios provisionales en aseguramiento de sentencia, conforme a la intención legislativa de nuestras reglas procesales vigentes.

C.

Ahora bien, aún cuando entendemos que la Regla 56.3 de Procedimiento Civil, *supra*, no es de aplicación a este caso, lo cierto es que las circunstancias bajo nuestra consideración tampoco satisfacen ninguna de las excepciones enumeradas en la misma para relevar al demandante de su obligación de prestar fianza. No estamos ante un supuesto de una obligación legalmente exigible que surja de un documento fehaciente. Más bien, lo que resulta claro en este caso es la existencia de la servidumbre; pero no así la existencia, en esta etapa procesal, de algún incumplimiento o violación de la misma. Por tanto, no se puede hablar en esta etapa de una obligación legalmente exigible.

De hecho, en Marty v. Ramirez, 73 D.P.R. 165 (1952), este Tribunal expresó que "para que pueda decretarse [un embargo] sin fianza para aseguramiento de la efectividad de la sentencia, es necesario que aparezca claramente del documento auténtico que la obligación es exigible, lo que

quiere decir, no sólo que los documentos en que se basa la petición sean auténticos, sino también, que fácilmente, sin gran dificultad, pueda el juez venir en conocimiento **de que realmente la obligación existe y puede reclamarse"**. En ese caso, la controversia giraba en torno a una deuda que el demandado había reconocido en documento firmado ante notario. A pesar de ello, decidimos que el mismo no era un caso donde el juez podía venir en conocimiento de que realmente la obligación existía y que podía reclamarse según los mismos términos indicados en el documento.[1]

Más aún, si trasladamos esa norma a los casos de *injunction* para hacer valer una servidumbre en equidad, sólo podríamos eximir a la parte promovente de la obligación de prestar fianza previa si surge de los hechos que no hay duda alguna de que el demandado violó la restricción invocada por el demandante. En tal caso, se requeriría prueba sobre la violación de las condiciones restrictivas para que pueda considerarse como una obligación legalmente exigible de acuerdo a la excepción establecida en la Regla 56.3 de Procedimiento Civil, *supra*.

---

[1] Cabe señalar que anteriormente también hemos considerado, como documento fehaciente, una sentencia condenatoria por tentativa de asesinato para probar un caso sobre daños y perjuicios sufridos por el proponente como consecuencia del acto criminal del demandado. Feliciano Figueroa v. Toste Pinero, 134 D.P.R. 909 (1993). Ello sugiere que para eximir de la prestación de la fianza bajo el supuesto indicado, debe tratarse de casos en los cuales -de manera objetiva y sin lugar a dudas- se demuestre que la parte promovente tenía una causa de acción en contra de la parte demandada.

Es decir, la mera inscripción no hace de la obligación una legalmente exigible para fines de la mencionada excepción. Para que se invoque la referida excepción no basta, como parecen sugerir las opiniones disidentes, que se presenten documentos públicos auténticos que acrediten la existencia de la servidumbre en equidad. Más bien, para que aplique la Regla 56.3 -y se exima al promovente de prestar fianza- no sólo debe ser clara y patente la existencia de la restricción, sino también la violación de la misma. Y es que no puede ser de otra manera, toda vez que lo contrario implicaría la posibilidad de paralizar una obra sin prestación de fianza con sólo mostrar evidencia de que hay una servidumbre en equidad debidamente inscrita, y con meramente alegar una violación a la misma.

En el caso ante nuestra consideración, la servidumbre en equidad que limita el uso de la vivienda a un uso familiar tiene un lenguaje ambiguo que requiere un ejercicio interpretativo basado en la intención de las partes. Una vez se aclare el alcance de dicha condición restrictiva, será necesario determinar si la parte demandada está incurriendo en violación a la misma. Esta es, precisamente, la controversia medular de este caso, la cual será adjudicada en su día. Por ende, no puede hacerse una determinación a los efectos de que el demandado está incurriendo en violación de la restricción en esta etapa preliminar de los procedimientos.

Por otro lado, la distinción que intenta hacer la opinión disidente de la Jueza Asociada Rodríguez Rodríguez entre el presente caso y la situación que enfrentamos en Marty v. Ramírez, *supra*, ignora que mientras no exista certeza interpretativa sobre el alcance de la servidumbre, las certificaciones en autos no constituyen una obligación legalmente exigible que se le pueda oponer a la AFE en esta etapa de los procedimientos. Por tanto, la evidencia que obra en autos sobre la referida servidumbre no constituye, como aduce la opinión disidente, "prueba fehaciente y auténtica sobre la existencia de una obligación legal que puede reclamarse por la Asociación de Vecinos". Op. dis. a la pág. 26. Para conceder el *injunction* preliminar sin la prestación de fianza previa bajo la referida excepción, era imprescindible que la Asociación de Vecinos demostrara fehacientemente la existencia de la violación a la restricción. Para paralizar una obra de construcción sin requerir fianza alguna, no puede ser suficiente probar la existencia de la servidumbre y presentar alegaciones sobre la probabilidad de que, dependiendo del margen interpretativo del juzgador, se cometió una violación.

A la luz de ello, entendemos que erró el foro de instancia al no requerir a la Asociación de Vecinos la prestación de la fianza correspondiente cuando dictó la orden de *injunction* preliminar, apoyando escuetamente su determinación en el hecho de que, de las escrituras públicas  y las certificaciones registrales del caso de

autos, surge que el solar en controversia es un predio sujeto a las condiciones restrictivas invocadas por los demandantes. Como ya indicamos, para que aplique la referida norma y se releve al promovente del requisito de fianza previa, no basta con que se pruebe la existencia de la servidumbre en equidad, sino que el demandante debe demostrar a cabalidad la violación clara y patente de la restricción invocada. En vista de lo anterior —y aun si se entendiera aplicable la referida regla— somos del criterio que en este caso no podía concederse el injunction preliminar sin que se prestara previamente la correspondiente fianza. Por tanto, dicha orden no debe sostenerse.[2]

III.

A.

No obstante lo anterior, nos corresponde examinar —en la alternativa— si procedía el *injunction* solicitado en esta etapa de los procedimientos. Sabido es que el *injunction* es un mandamiento judicial que, ya sea en su carácter reparador o preventivo, prohíbe o compele a una persona la realización de determinada conducta que infringe o perjudica los derechos de otra. Art. 675 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3521; E.L.A. v. Asoc. de Auditores, 147 D.P.R. 669 (1999). Se trata de un

---

[2] El caso de autos tampoco trata de un supuesto de litigantes indigentes ni se ha reclamado el remedio luego de recaída la sentencia. Por tanto, no se configuran ninguna de las excepciones enumeradas en la Regla 56.3 de Procedimiento Civil, *supra.*

remedio judicial que entraña la presencia de la urgencia toda vez que está dirigido a evitar un daño inminente. Peña v. Federación de Esgrima de P.R., 108 D.P.R. 147 (1978); Ortega Cabrera v. Tribunal Superior, 101 D.P.R. 612 (1973).

En particular, el *injunction* preliminar es una medida provisional que tiene el propósito fundamental de mantener el *status quo* hasta que se celebre el juicio en sus méritos. Mun. de Ponce v. Gobernador, 136 D.P.R. 776 (1994). De esa forma, la orden de *injunction* preliminar evita que la conducta del demandado produzca una situación que convierta en académica la sentencia que finalmente se dicte o que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. Cobos Licia v. DeJean Packing, 124 D.P.R. 896 (1989).

El *injunction* preliminar se puede emitir en cualquier momento del pleito, antes del juicio en su fondo, y comúnmente se solicita junto con la radicación del pleito en casos de urgencia. Esto requiere que el tribunal paute prontamente un señalamiento de vista para discutir los méritos de la moción y para que las partes tengan la oportunidad de presentar prueba en apoyo de su posición. Mun. de Ponce v. Gobernador, *supra*; D. Rivé Rivera, Recursos Extraordinarios, *supra*, a la pág. 21; D. Rivé, El Injunction en Puerto Rico, 53 Rev. Jur. U.P.R. 341 (1984).

Al momento de dictar un *injunction* preliminar el tribunal debe analizar, entre otras cosas, lo siguiente: (1) la naturaleza de los daños que pueden causársele a la

parte contra la cual se solicita el recurso; (2) la naturaleza de los daños que puede sufrir la parte promovente de denegarse el recurso; (3) la irreparabilidad de los daños; (4) la existencia de un remedio adecuado en ley; (5) la probabilidad de que el promovente prevalezca eventualmente al resolverse el litigio; (6) si existe la probabilidad de que la causa se torne académica de no concederse el *injunction*, y (7) el impacto sobre el interés publico de concederse o denegarse el recurso. 32 L.P.R.A. sec. 3523; Mun. de Ponce v. Gobernador, *supra*; García v. World Wide Entmt. Co., 132 D.P.R. 378 (1992). El peso de probar la procedencia del *injunction* recae sobre la parte promovente. Systema de P.R., Inc. v. Interface Int'l, 123 D.P.R. 379 (1989).

Dada su naturaleza extraordinaria y sumaria, hemos señalado que la utilización de este mecanismo requiere que el tribunal ejerza su discreción judicial con celo y buen juicio. Asimismo, hemos indicado que el *injunction* debe concederse en aquellos casos de clara necesidad y solamente ante una demostración de indudable e intensa violación de un derecho. A.P.P.R. v. Tribunal Superior, 103 D.P.R. 903 (1975). También hemos expresado que la decisión del tribunal de instancia para conceder o denegar la orden de *injunction* no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional. E.L.A. v. Asoc. de Auditores, 147 D.P.R. m669 (1999); Delgado v. Cruz, 27 D.P.R. 877 (1919). A pesar de que se

trata de una decisión de tipo discrecional, los tribunales no podemos tomar a la ligera su concesión, sobretodo cuando la expedición del remedio implica una intervención con el derecho propietario del promovido.

B.

En el caso de autos, la Asociación de Vecinos adujo que la edificación que estaba construyendo la AFE violaba las servidumbres en equidad de Villa Caparra Sur. En particular, hizo referencia a las cláusulas que establecen las restricciones que gravan el solar de la AFE. Una de ellas reza de la manera siguiente:

> En cada uno de los solares que se deslinden, segreguen y vendan no podrá construirse más de **una casa residencia, de una sola vivienda**, el costo de la cual no podrá ser menor de Tres Mil Dólares; podrán sin embargo construirse edificaciones independientes para alojamiento de servidumbre, chauffer, etc., así como también para almacenaje de automóviles privados. (Énfasis nuestro).

El solar objeto de este recurso está sujeto, además, a otra restricción que dispone, en lo pertinente que "no podrá construirse nada más que **una casa destinada a residencia para una sola familia**" (énfasis nuestro). Dicha cláusula reitera el uso residencial del solar y, además, limita el destino de la residencia a "una sola familia".

Amparándose en ello, la Asociación de Vecinos adujo que la construcción no era una residencia para una sola familia, sino una edificación de carácter institucional destinada a personas que no constituyen una familia. En

vista de lo anterior, solicitó que se emitiera un *injunction* preliminar para prohibir la construcción.

Por su parte, la AFE alegó que, durante los últimos dieciocho (18) años, en la residencia objeto de re-construcción ha vivido un grupo de entre seis y ocho mujeres, las cuales son afiliadas a una misma orden religiosa y que, por ende, constituyen una sola familia de conformidad con las restricciones mencionadas. En la alternativa, sostuvieron que -de haber alguna violación- aplicaban las defensas de incuria y de extinción de la servidumbre por cambios en el vecindario.

De lo anterior surge que la controversia medular de este caso gira en torno al alcance y significado del término "familia" y de lo que debe entenderse por "residencia para una sola familia". La parte demandante propone una interpretación restrictiva del concepto "familia" y, a esos fines, sostiene que se requieren ciertos vínculos de consanguinidad o lazos legales. Por su parte, la AFE aboga por una interpretación amplia que incluye una organización domestica común conforme a las definiciones contenidas en el Reglamento de Ordenamiento Territorial del Municipio y en el Uniform Building Code. Así, al amparo de sus respectivos argumentos, las partes ofrecen una interpretación particular del concepto "familia" que lleva a un resultado diametralmente opuesto con respecto a la alegada violación de la servidumbre en equidad.

Para atender esta controversia, es imperativo hacer un análisis con el propósito de determinar la voluntad real de las partes al momento de establecer las restricciones sobre los predios gravados por la servidumbre. Véase Residentes Parkville Sur v. Díaz Luciano, 159 D.P.R. 374 (2003). En este caso, la escritura que contiene las restricciones no ofrece suficientes herramientas, ya que no define los conceptos en controversia. Si recurrimos a otras fuentes para aclarar el alcance de las cláusulas en cuestión, notamos que tanto el Reglamento de Ordenamiento Territorial del Municipio como el Uniform Building Code proporcionan una definición amplia en lo que respecta a la "organización domestica común".

De la misma forma, si examinamos el significado del término "familia" en la vigésima segunda edición del Diccionario de la Real Academia Española (2001), encontramos, entre otras acepciones, que puede referirse a un "conjunto de personas que tienen alguna condición, opinión o tendencia común" y a un "cuerpo de una orden o religión, o parte considerable de ella". Por otro lado, aun cuando se considerara aplicable un significado restrictivo, no podría ignorarse el hecho de que este caso no se trata de una nueva edificación, sino de una reconstrucción de una ya existente, en la cual se proyecta la convivencia de un grupo de personas que se mantuvieron ocupando la residencia por más de veinte años. Por ende, correspondería determinar

si la defensa de incuria levantada por la AFE impide el *injunction* solicitado.

En fin, resulta evidente que estamos ante una servidumbre en equidad que requiere cierto ejercicio interpretativo por parte del juzgador de los hechos para poder determinar su significado y alcance. Un análisis desapasionado demuestra que las interpretaciones propuestas por las partes y sus posibilidades de prevalecer podrían ser igualmente viables. Ello, a su vez, pone de manifiesto el carácter genuino de la controversia así como la necesidad de que se celebre un juicio plenario. Dicho resultado se impone más aún si tomamos en cuenta que el foro de instancia basó su determinación de conceder el *injunction* en el carácter atípico de la estructura, lo cual hubiera precisado prueba sobre al menos una muestra de las demás residencias y sobre la defensa de extinción levantada por la AFE.

Claramente, en este caso el foro de instancia abusó de su discreción al no permitir que las partes presentaran prueba testifical. Aunque textualmente las normas sobre la celebración de la vista de *injunction* no exigen que se presente evidencia testifical, las circunstancias dudosas de este caso sí lo requerían. No podemos pasar por alto que en este caso el efecto de la concesión del *injunction* preliminar afectaría el derecho propietario de los demandados, privándolos del disfrute de su propiedad sin una determinación en los méritos y por un tiempo

indeterminado. A su vez, debemos tener en cuenta que la AFE presentó como defensa la incuria de la Asociación de Vecinos, alegando hechos constitutivos de ese tipo de defensa. No obstante, dada la ausencia de una vista plenamente evidenciaria, la AFE no pudo presentar prueba a tales efectos, por lo que se le violó el debido proceso de ley.

En vista de todo lo anterior, entendemos que no puede sostenerse la orden de *injunction* preliminar dictada por el tribunal de instancia. En derecho lo que procede es revocar dicho dictamen sin mayor dilación para que el tribunal de instancia pueda dilucidar las controversias medulares entre las partes lo antes posible. Por ende, procede confirmar la sentencia recurrida del Tribunal de Apelaciones.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Vecinos de Villa Caparra Sur, Inc., así como Henry W. Schettini Gutiérrez, Presidente<br>Peticionario | CC-2006-1063 *Certiorari* |

v.

Asociación de Fomento Educativo, Inc.
Recurridos

v.

Municipio Autónomo de Guaynabo p/c/d su Alcalde, el Hon. Héctor O'Neill García
Parte Demandante No Recurrida

v.

César T. Andréu Megwinoff; Blas R. Ferraiuoli Martínez y otros
Peticionarios-Terceros Demandados

Opinión disidente emitida por la Jueza Asociada señora FIOL MATTA

En San Juan, Puerto Rico, a 20 de noviembre de 2007.

La peticionaria, Asociación de Vecinos de Villa Caparra Sur, Inc., presentó una demanda de *injunction* preliminar y permanente en el Tribunal de Primera Instancia para hacer valer las servidumbres en equidad de su urbanización. A ese fin solicitó la paralización y demolición de la construcción de los recurridos, Asociación de Fomento Educativo, Inc. El tribunal de

instancia emitió el *injunction* preliminar ordenando la paralización de la construcción de los recurridos, aplicando la Regla 56 de las de Procedimiento Civil y eximiendo a la peticionaria de prestar fianza. Posteriormente, el Tribunal de Apelaciones revocó al foro de instancia. Concluyó que éste había errado al no celebrar una vista evidenciaria sobre la procedencia del *injunction* preliminar.

I

La Regla 56 antes citada dispone que antes o después de la sentencia y por moción del reclamante, un tribunal puede dictar una "orden para hacer o desistir de hacer cualesquiera actos específicos" que asegure la efectividad de la sentencia. *Id.*[3] Según el Comité Consultivo de Reglas de Enjuiciamiento Civil de 1954 la Regla 56 se creó con el propósito de incorporar el remedio de *injunction* al procedimiento civil ordinario para que se pudiera expedir

---

[3] La Regla 56.1, 32 L.P.R.A. Ap. III R.56.1, dispone:

> En todo pleito antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden **para hacer o desistir de hacer cualquiera actos específicos**, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, **el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial**. (Énfasis suplido) *Id.*

como orden provisional de aseguramiento de sentencia **sin que fuera necesario demostrar que no existe un remedio adecuado en ley**:

> El texto propuesto representa una fusión del *injunction* como medida provisional autorizada por las secciones 2 y 3 del art. 677 del Código de Enjuiciamiento Civil y la Regla (d) del art. 2 de la Ley Para Asegurar la Efectividad de las Sentencias. Borrador del Proyecto de Reglas de Enjuiciamiento Civil, Tribunal Supremo (1954), pág. 146. Véase además, D. Rivé Rivera, <u>Recursos Extraordinarios</u>, 2da edición, pág. 13.[4]

Por esto, la Regla 56 establece criterios flexibles para emitir una orden de hacer o desistir y, además, contiene excepciones a la imposición de fianza.

La Regla 57, *supra,* proviene de la jurisdicción federal y exige que el peticionario de un *injunction* establezca la ausencia de un remedio adecuado en ley.[5] Hemos resuelto que para que se pueda emitir un *injunction* preliminar bajo esta regla es necesario establecer:

---

[4] Al respecto Rivé Rivera explica:

> El propósito expreso de la reforma fue el de integrar al injunction dentro del procedimiento ordinario para evitar que se denegara su expedición, exclusivamente, por no haber demostrado el peticionario que carecía de lo que la equidad consideraba que era un "remedio adecuado en ley". Rivé Rivera, <u>Recursos Extraordinarios</u>, 2da edición, pág. 13.

[5] Al respecto, Rivé Rivera expresa:

> Aunque se mantuvo íntegra la Regla 56 sobre remedios provisionales, conforme a la intención del Comité, se añadió una regla sobre injunction tomada literalmente de la federal. Rivé Rivera, <u>op. cit.</u>, 2da edición, pág. 14.

1. La naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*;

2. su irreparabilidad o la existencia de un remedio adecuado en ley;

3. la probabilidad de que la parte promovente prevalezca en los méritos;

4. la probabilidad de que la causa se torne académica; y

5. el posible impacto sobre el interés público. Puerto Rico Telephone Co. v. Tribunal Superior, 103 D.P.R. 200 (1975). Véase además, Mun. de Ponce v. Gobernador, 136 D.P.R. 776, 784 (1994), Mun. de Loíza v. Sucns. Suárez *et al*, 154 D.P.R. 333, 367 (2001).

En particular, el requisito de daño irreparable constituye un aspecto de la regla básica de que el *injunction* sólo procede si no existe un remedio adecuado en ley. Cruz v. Ortiz, 74 D.P.R. 321, 328 (1953). Véase además, Rivé Rivera, op. cit., pág. 31.

Debido a que ambas reglas proveen mecanismos distintos para obtener el mismo remedio de *injunction pendente lite*, existe un conflicto respecto a su aplicación que aún no hemos resuelto. Al respecto, Rivé Rivera aclara:

> Se produce una curiosa situación: al que solicita un *injunction*, y así lo denomina, le aplicaría la reglamentación estricta de la Regla 57, regla que siempre exige fianza y cuyas órdenes ex parte

tienen una vigencia máxima de veinte días. Por otro lado, si se pide **igual remedio** bajo el nombre de una "orden provisional de no hacer" a tenor con la Regla 56, con toda seguridad podría acogerse a los requisitos más flexibles de esta última regla que permite emitir éstas órdenes sin fianza y sin límites de tiempo. Tal parece como si la ley a ser aplicada dependiese del título que lleve la petición. (Énfasis suplido) Rivé Rivera, op. cit., 2da edición, pág. 15.

En el caso que nos ocupa debemos tener presente una consideración adicional y es que existe una norma especial respecto a las servidumbres en equidad pertinente a dicho conflicto. Hace más de un siglo resolvimos que los dueños de predios sujetos a servidumbres en equidad tienen disponible el remedio de *injunction* para hacer efectivos sus derechos, norma que hemos reiterado en numerosas ocasiones. Glines v. Matta, 19 D.P.R. 409 (1903), Asoc. v. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 353-354 (1986). Además, hemos establecido que cuando se solicita el *injunction* para hacer valer una servidumbre en equidad no es necesario probar daño irreparable o ausencia de remedio adecuado en ley:

> Cuando se solicita remedio en equidad, la prueba de daños reales o perjuicios sustanciales no es esencial, siendo necesario solamente demostrar una violación de la restricción para que el demandante tenga derecho al remedio solicitado. Santaella v. Purón, 60 D.P.R. 552, 559 (1956). Véase además, Pérez v. Pagán, 79 D.P.R. 195, 199-200 (1956), Colón v. San Patricio Corporation, 81 D.P.R. 242, 253-256 (1959).[6]

---

[6] Al respecto, Rivé Rivera nos explica:

> Tampoco es necesario alegar, ni probar, la ausencia de un recurso adecuado en ley cuando se intenta poner en vigor derechos sustantivos que surgieron del derecho de equidad como las llamadas "servidumbres de equidad" o el cumplimiento de las obligaciones al

Esta norma es cónsona con el propósito de la Regla 56, por lo cual es razonable aplicar dicha regla cuando se emita un *injunction* preliminar para hacer valer una servidumbre en equidad.

Al amparo de la Regla 56.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R.56.3, se podrá conceder un remedio provisional sin la prestación de fianza cuando apareciere de documentos públicos o privados, según definidos por ley, firmados ante una persona autorizada para administrar juramento, que la obligación es exigible. *Id.* En lo que a este caso se refiere, sabemos que una vez las servidumbres en equidad son inscritas en el Registro de la Propiedad éstas constituyen derechos reales oponibles a terceros y por lo tanto, exigibles, que limitan el uso al que puedan dedicarse y las edificaciones que puedan construirse en los predios sirvientes. Asoc. V. Villa Caparra v. Iglesia Católica, *supra*, en las págs. 351-353. Véase además, Carrillo Norat v. Camejo, 107 D.P.R. 132, 136-137 (1978).[7]

Finalmente, la Regla 56.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R.56.2, dispone que no se concederá un remedio provisional sin notificar a la parte

---

amparo de un "trust" o fideicomiso. Rivé Rivera, op. cit., pág. 20.

[7] El artículo 481 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1673, dispone que "el dueño del predio sirviente no podrá menoscabar de modo alguno el uso de la servidumbre constituida". *Id.*

adversa y sin celebrar vista, salvo las situaciones excepcionales establecidas en las Reglas 56.4 y 56.5. *Id.*

### III

En el caso ante nuestra consideración, la peticionaria solicitó un *injunction* preliminar para asegurar la sentencia que en su día pueda emitirse si finalmente se establece en los méritos del caso que los recurridos violaron las servidumbres en equidad de su urbanización. Según expusimos antes, al no requerirse en estos casos prueba de daño irreparable ni ausencia de un remedio adecuado en ley nada impide que se aplique la Regla 56 de las de Procedimiento Civil, *supra*. A tenor con los criterios establecidos en esa disposición, que son más flexibles que los establecidos por la Regla 57, procede conceder lo solicitado.[8]

Además, el foro de instancia no erró al eximir a la peticionaria de prestar fianza, ya que ésta estableció mediante escritura pública y certificaciones registrales que las servidumbres en equidad son exigibles. A su vez, el tribunal de instancia no abusó de su discreción al no

---

[8] Sobre la flexibilidad de la Regla 56, en el caso <u>F.D. Rich Co. v. Tribunal Superior</u>, 99 D.P.R. 158 (1970), expresamos lo siguiente:

> La Regla 56 de Procedimiento Civil confiere al tribunal suficiente flexibilidad para dictar las medidas que estime necesarias o convenientes, según las circunstancias del caso, para asegurar la efectividad de las sentencias. Su única limitación es que la medida sea razonable y adecuada al propósito esencial de la misma, que es garantizar la efectividad de la sentencia que en su día podría dictarse. *Id.,* en la pág. 176.

celebrar una vista evidenciaria antes de emitir el *injunction* preliminar pues las partes tuvieron oportunidad suficiente de someter sus argumentos y alegatos por escrito, se celebró una vista ocular y el tribunal tuvo suficiente prueba para conceder el remedio provisional.

Por los fundamentos antes expuestos disiento de la sentencia emitida por este Tribunal, que confirma la decisión del Tribunal de Apelaciones.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Vecinos de Villa Caparra Sur, Inc., así como Henry W. Schettini Gutiérrez, su Presidente<br>        Peticionarios<br><br>                v.<br><br>Asociación de Fomento Educativo, Inc., t/c/c Association for Educational Development, Inc.<br>        Recurridos<br><br>                v.<br><br>Municipio Autónomo de Guaynabo p/c/d su Alcalde, el Hon. Héctor O'Neill García<br>Parte Demandante No<br>        Recurrida<br><br>                v.<br><br>César T. Andréu Megwinoff; Blas R. Ferraiuoli Martínez; y otros<br>Peticionarios-Terceros<br>        Demandados | CC-2006-1063 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le une el Juez Asociado señor Rebollo López

San Juan, Puerto Rico, a 20 de noviembre de 2007

# I

## A

El presente caso versa sobre una solicitud de *injunction* preliminar presentada por la demandante-peticionaria Asociación de Vecinos de Villa Caparra Sur (Asociación de

Vecinos) en contra de la Asociación de Fomento Educativo (AFE), a los fines de hacer valer las servidumbres en equidad que gravan las propiedades sitas en la Urbanización Villa Caparra Sur.  En su parte pertinente, las referidas servidumbres impuestas por los esposos González-Giusti en el año 1939, rezan:

> [e]n cada uno de los solares que se deslinden, segreguen y vendan **no podrá construirse más de una casa residencia, de una sola vivienda**, el costo de la cual no podrá ser menor de [t]res [m]il [d]ólares; podrán sin embargo construirse edificaciones independientes para alojamiento de servidumbre, chauffeur, etc., así como también para almacenaje de automóviles privados.

*Véase* apéndice del recurso de *certiorari*, págs. 230-31. (énfasis nuestro).

## B

En el año 1983, la parte demandada-recurrida, Asociación de Fomento Educativo, adquirió la propiedad sita en la Calle J-42 de la Urbanización Villa Caparra Sur.[9]  *Véase* escritura de compraventa número 635, apéndice del recurso de *certiorari, págs.* 244-48.  AFE es una corporación sin fines de lucro asociada a la Prelatura Personal de la Iglesia Católica conocida como la *Prelatura de la Santa Cruz y Opus Dei* (Opus Dei).  *Véase* apéndice del recurso de *certiorari*, págs. 304-05.  Según obra en autos, entre los meses de mayo y

---

[9] Dicha propiedad, a su vez, está afecta a las siguientes restricciones: "no podrá construirse nada más que una casa destinada a residencia para una sola familia y cuya edificación deberá construirse de concreto a un costo mínimo de [c]inco [m]il [d]ólares, y dicha casa deberá ser Construida a una distancia no menor de quince pies de la calle que dé a su frente". *Véase,* escritura número 47, otorgada el 16 de diciembre de 1950, apéndice del recurso de *certiorari*, págs. 237-238.

junio de 2005, AFE comenzó a demoler dicha propiedad con el propósito de construir una nueva edificación. Ante dichas actuaciones, en el mes de agosto de 2005, la Asociación de Vecinos presentó una querella ante la Oficina de Permisos Urbanísticos del Municipio de Guaynabo impugnando el proyecto.[10]

El azaroso trámite judicial del caso que nos ocupa comenzó el 3 de noviembre de 2005 cuando la Asociación de Vecinos presentó una demanda de interdicto preliminar y permanente para hacer valer las condiciones restrictivas de uso y construcción que pesan sobre la Urbanización Villa Caparra Sur.[11] También solicitó que dicho foro primario ordenara la demolición de la estructura que los demandados-recurridos habían comenzado a construir. Posteriormente, el 10 de noviembre de 2005, la Asociación de Vecinos presentó una petición de *Injunction* Preliminar.[12]

El 29 de diciembre de 2005, el tribunal de instancia paralizó la construcción. No obstante, AFE recurrió de dicha orden al Tribunal de Apelaciones. Dicho foro revocó la orden

---

[10] Surge de los documentos que obran en el expediente de este caso que, luego de una serie de trámites, la Asociación de Vecinos presentó 3 apelaciones distintas ante la Junta de Apelaciones sobre Construcciones y Lotificaciones: la primera, el 15 de noviembre; la segunda, el 9 de diciembre; y la tercera, el 12 de diciembre del 2005. Según aduce el Municipio de Guaynabo en su comparecencia, dicho procedimiento administrativo aún está pendiente.

[11] AFE contestó la demanda el 14 de noviembre de 2005, presentó reconvención contra la Asociación e incluyó como terceros demandados a un gran número de vecinos de la Urbanización Villa Caparra Sur. *Véase* apéndice del recurso de *certiorari*, págs. 284-312.

[12] Además, la Asociación reiteró su solicitud de interdicto permanente.

de paralización por deficiencias en la notificación de la citación a la vista celebrada el 29 de diciembre de 2005. El 26 de mayo de 2006, tras recibir el mandato del Tribunal de Apelaciones y a petición de la Asociación de Vecinos, el tribunal de instancia señaló una vista argumentativa para dirimir la solicitud de paralización como remedio provisional en aseguramiento de la sentencia que en su día se dicte. Apéndice del recurso de *certiorari,* pág. 463. El tribunal pautó dicha vista para el 20 de julio de 2006. El 30 de junio de 2006, AFE recurrió de dicha determinación ante el Tribunal de Apelaciones. En dicha ocasión, el foro apelativo intermedio confirmó la resolución del Tribunal de Primera Instancia y determinó que no existía impedimento alguno para que dicho foro celebrara la vista pautada para el 20 de julio de 2006.

Acorde con la determinación del Tribunal de Apelaciones, el Tribunal de Primera Instancia celebró la referida vista durante los días 20 y 21 de julio de 2006.[13] El 20 de julio de 2006, los abogados de AFE solicitaron que el tribunal de instancia celebrara una vista evidenciaria en lugar de una vista argumentativa como se había anticipado. Indicaron que tenían testigos en sala para declarar en la vista si el tribunal lo permitía.[14] *Véase* transcripción de la vista, apéndice del recurso de *certiorari*, pág. 579. El honorable

---

[13] En la primera etapa de la vista celebrada el 20 de julio, el tribunal dirimió asuntos procesales del caso. En la segunda, atendió el asunto de la orden provisional de paralización.

[14] Entre los testigos disponibles mencionaron al ingeniero Camilo Almeyda y al señor Juan Riestra.

juez del tribunal de instancia se reservó el fallo final sobre la petición de AFE y determinó que escucharía los argumentos de las partes.[15] *Id.* pág. 581.

En su turno de argumentación, el representante legal de la Asociación de Vecinos presentó varias fotografías sobre la construcción en controversia.[16] Además, utilizó en su argumentación los planos preparados para la construcción de la casa, la hoja de demolición y los planos de plomería de la estructura. *Véase* transcripción de la vista, apéndice del recurso de *certiorari*, págs. 595-607.

En la segunda parte de la vista celebrada el 21 de julio de 2006, el representante legal de la Asociación de Vecinos presentó en evidencia los siguientes documentos: fotografías de la construcción realizada en la propiedad de AFE; certificación registral de la propiedad J-42; certificación registral de la finca de mayor cabida de la cual se segregó la finca en controversia; y copia certificada de la escritura pública mediante la cual AFE adquirió la propiedad J-42.

Luego de presentar su prueba documental, el representante legal de la Asociación de Vecinos solicitó autorización para presentar el testimonio de su perito ingeniero. Ante dicha solicitud, surgió una intensa discusión sobre la naturaleza de la vista. Los

---

[15] Además, el tribunal de instancia pautó una vista evidenciaria para el 2 de noviembre de 2006 en la que dilucidaría si las servidumbres en equidad de la urbanización en controversia se han extinguido.

[16] Por su parte, la representante legal de AFE objetó la presentación de dicha evidencia, pero el tribunal declaró su objeción sin lugar.

representantes legales de AFE reiteraron que era su deseo que el tribunal celebrara una vista evidenciaria. Sin embargo, indicaron que, a raíz de la discusión en la vista del día anterior, entendieron que el tribunal no admitiría prueba testifical. Por ello, no contaban con la presencia de sus peritos.

Ante la discusión que se suscitó entre los abogados, el tribunal determinó que no era necesario recibir prueba testifical para determinar si procedía emitir una orden bajo la Regla 56 de Procedimiento Civil para paralizar la obra. *Véase* Trascripción de la vista, apéndice del recurso de *certiorari*, pág. 711. Adujo que contaba con abundante prueba documental para determinar si procedía paralizar la obra de construcción en la residencia J-42. Por tanto, determinó que celebraría una vista argumentativa y citó a las partes, junto a sus peritos ingenieros, a una inspección ocular que se celebraría el 31 de julio de 2006.

Finalmente, los representantes legales de AFE presentaron sus argumentos ante el tribunal. En su exposición, presentaron los siguientes documentos: permisos de construcción expedidos por el Municipio de Guaynabo; fotografías sobre diversas residencias sitas en la Urbanización Villa Caparra; fotografía de la residencia J-42 en construcción; copia del plan de ordenación territorial del Municipio de Guaynabo; fotografía de una residencia en la urbanización con una cartelón alusivo a la oposición de los vecinos a la construcción realizada por AFE; copia de una

moción presentada por la Asociación de Vecinos ante el tribunal de primera instancia en otro pleito civil en la que se incluye un listado de los miembros residentes de la Asociación de Vecinos de Villa Caparra Sur para el año 1996; copia de una carta de la Autoridad de Energía Eléctrica identificando que la propiedad J-42 tiene tarifa residencial de servicio; y un documento sobre la proyección de pérdidas que AFE sufriría si el tribunal paralizaba la construcción.

El 31 de julio de 2006 se celebró la inspección ocular de la residencia J-42 en la Urbanización Villa Caparra Sur. En dicha vista, el honorable juez de instancia recorrió la propiedad y discutió los planos de construcción con los peritos ingenieros de ambas partes.  Posteriormente, el honorable juez hizo un recorrido por la urbanización para observar, desde la vía pública, varias residencias allí localizadas. Sin embargo, el tribunal rechazó la petición de AFE de realizar un recorrido  extenso de ciertas residencias localizadas en la Urbanización.  En esa misma fecha, AFE presentó una *moción sometiendo oferta de prueba en vista*, en la que detalló el testimonio que sus testigos hubiesen prestado en la vista.

Celebrada la vista, el tribunal de instancia les concedió a las partes un término para presentar sendos escritos suplementando sus argumentos. El 17 de agosto de 2006, con el beneficio de los escritos de las partes, el tribunal declaró no ha lugar la oferta de prueba presentada por AFE y emitió una orden de *injunction* preliminar.

Mediante su orden, el foro primario paralizó las obras de construcción realizadas en la propiedad J-42 y determinó que no procedía imponer el pago de una fianza.

Inconforme, el 15 de septiembre de 2006, AFE presentó recurso de *certiorari* ante el Tribunal de Apelaciones. El 20 de octubre de 2006 dicho foro apelativo intermedio emitió sentencia en la que revocó la orden del tribunal de instancia. Entendió que el foro primario había errado al emitir la orden de paralización luego de celebrar una vista argumentativa en la que no le permitió a AFE presentar su prueba testifical y cierta prueba documental. Además, el foro apelativo intermedio determinó que el tribunal de instancia debió celebrar una vista evidenciaria en la cual las partes pudieran presentar prueba testifical y documental.

El 22 de noviembre de 2006 la Asociación de Vecinos presentó ante nosotros una moción en auxilio de jurisdicción y un recurso de *certiorari*. En esencia, señaló que la exclusión errónea de la prueba testifical y documental no fue un factor sustancial en la decisión del tribunal de instancia por lo que no cambiaría el resultado al que llegó dicho foro. En segundo lugar, arguyó que al no ser una vista en los méritos, el debido proceso de ley no exigía la presentación de prueba testifical. En la alternativa, alegó que AFE renunció a su derecho a una vista evidenciaria.

El 5 de diciembre de 2006 declaramos no ha lugar ambas peticiones. El 26 de enero de 2007, tras examinar la oportuna moción de reconsideración presentada por la

Asociación de Vecinos, le concedimos término a la parte recurrida para mostrar causa por la cual no debíamos expedir el presente recurso. En auxilio de nuestra jurisdicción, paralizamos las obras de construcción. El 20 de febrero de 2007 la demandada-recurrida presentó su *moción en cumplimiento de orden y mostrando causa*.[17]

## II

Inicio esta discusión indicando que, en esta etapa de los procedimientos, no nos corresponde resolver si la construcción realizada por AFE violenta las disposiciones de las servidumbres en equidad que gravan la Urbanización Villa Caparra Sur. Tampoco nos corresponde dirimir si AFE le dará un uso institucional incompatible con las referidas servidumbres. Sólo nos compete determinar si erró el Tribunal de Apelaciones al revocar la orden de *injunction* preliminar emitida en el presente caso bajo el fundamento de que el Tribunal de Primera Instancia incidió al determinar que no procedía admitir prueba testifical y cierta prueba documental en la vista de *injunction*.

---

[17] El 27 de febrero de 2007 declaramos no ha lugar sendas mociones solicitando vista oral presentadas por el Municipio de Guaynabo y por la Asociación de Vecinos. El 2 de marzo de 2007 la Asociación de Vecinos presentó una urgente moción en la que solicitó permiso para replicar a la moción en cumplimiento de orden y mostrando causa presentada por AFE. En atención a ello, el 7 de marzo de 2007 le concedimos a las partes un término simultáneo de cinco días para expresarse. Transcurrido dicho término, la Asociación de Vecinos solicitó una prórroga para comparecer. El 14 de marzo denegamos la prórroga solicitada. No empece a ello, la Asociación de Vecinos presentó su réplica el 20 de marzo de 2007, fuera del término concedido. En vista de la presentación tardía de dicho documento, no lo consideraremos en nuestra decisión.

La demandante-peticionaria alega que la exclusión de la prueba testifical en la vista de *injunction* preliminar no fue un factor decisivo o sustancial en la orden de paralización emitida por el tribunal de instancia. Aduce que la vista de *injunction* preliminar no es un juicio en su fondo por lo que el tribunal de instancia tiene discreción para limitar la prueba admisible en la misma. Además, arguye que el tribunal de instancia admitió prueba documental y celebró una vista ocular por lo que contaba con suficiente prueba para determinar si procedía dictar una orden de *injunction* en aseguramiento de sentencia al amparo de la Regla 56 de Procedimiento Civil.

Por su parte, AFE arguye que la exclusión de cierta prueba testifical configuró una violación a su derecho al debido proceso de ley por lo que actuó correctamente el Tribunal de Apelaciones al dejar sin efecto la orden de *injunction* expedida por el tribunal de instancia. Además, aduce que en una vista de *injunction* el tribunal de instancia debe recibir prueba documental y testifical.

**III**

En primer término, la determinación de si el tribunal de instancia erró al no admitir cierta prueba testifical en la vista de *injunction* requiere analizar la naturaleza del mecanismo de *injunction* como remedio provisional en aseguramiento de sentencia al amparo de la Regla 56 de Procedimiento Civil. 32 L.P.R.A. Ap. III, R. 56.

Desde el año 1958, la Regla 56 de Procedimiento Civil rige la concesión de remedios provisionales en aseguramiento de sentencia. En esencia, esta Regla permite "asegurar la efectividad de las sentencias y reivindicar…, no s[ó]lo la justicia debida a las partes, sino también la dignidad de la función judicial. *Román v. S.L.G. Ruiz*, 159 D.P.R. 116, 120 (2003) (*citando a Stump Corp. v. Tribunal Superior*, 99 D.P.R. 179 (1970)). "Su única limitación es que la medida sea razonable y adecuada al propósito esencial de la misma, que es garantizar la efectividad de la sentencia que en su día pudiera dictarse". *F. D. Rich Co. v. Tribunal Superior*, 99 D.P.R. 158, 176 (1970).

En atención a lo anterior, la Regla 56.1 de Procedimiento Civil indica que,

> **[e]n todo pleito antes o después de [dictada la] sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia.** El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, **una orden para hacer o desistir de hacer cualesquiera actos específicos**, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial.

32 L.P.R.A. Ap. III. R. 56.1. (énfasis nuestro).

Entre los remedios en aseguramiento de sentencia asequibles a una parte bajo la Regla 56.1 de Procedimiento Civil se encuentra una orden para hacer o desistir de hacer.

Por su parte, la Regla 56.5 de Procedimiento Civil rige los contornos procesales de este remedio e indica que

> [n]o se concederá ninguna orden bajo esta regla para hacer o desistir de hacer cualquier acto específico, sin una notificación a la parte adversa, a menos que aparezca claramente de los hechos específicos acreditados por la declaración jurada que el solicitante sufrirá perjuicios, daños o pérdidas irreparables antes de notificarse y de celebrarse una vista sobre la solicitud.

32 L.P.R.A. Ap. III, R. 56.5.

Al incluir una orden de hacer o desistir de hacer entre los posibles remedios en aseguramiento de sentencia, la Regla 56 de Procedimiento Civil integró el *injunction* como medida provisional según dispone el artículo 677 del Código de Enjuiciamiento Civil y las disposiciones sobre aseguramiento de sentencias contenidas en el artículo 2(d) de la Ley para asegurar la efectividad de las sentencias de 1902.[18] *Borrador del proyecto de reglas de enjuiciamiento civil,* Comité consultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, *pág.* 146 (1954). Esto, con el propósito de "otorgar al tribunal una facultad general para tomar a solicitud de parte las medidas que estime necesarias o convenientes según las circunstancias del caso para asegurar la efectividad de la sentencia". *Id. p*ág. 141.

---

[18] La Ley de Aseguramiento de sentencias del 1ro de marzo de 1902 le concedía a toda persona que demandara en cumplimiento de una obligación, el derecho de obtener una orden en aseguramiento de la efectividad de la sentencia que un día el tribunal dictare. A estos efectos, en su artículo 2(d), dicha Ley incluía entre las medidas en aseguramiento de sentencia una orden de dejar de hacer. La Regla 72 de Procedimiento Civil de 1972 derogó expresamente la Ley de Aseguramiento de sentencias de 1902. 32 L.P.R.A. Ap. III, R. 72.

En virtud de lo anterior, la Regla 56.1 de Procedimiento Civil asentó en nuestro ordenamiento el *injunction* como un mecanismo flexible que faculta a los tribunales a conceder este remedio acorde con las exigencias de la justicia sustancial y los intereses de las partes. Bajo esta Regla, el tribunal tiene la facultad de emitir un *injunction* preliminar con el propósito de mantener el *status quo*, mientras se dilucida el pleito en sus méritos. *Véanse Mun. de Ponce v. Gobernador*, 136 D.P.R. 776, 784 (1994); *Cobos Liccia v. DeJean Packing Co., Inc.* 124 D.P.R. 896 (1989).

Al considerar una petición de *injunction* preliminar en aseguramiento de sentencia, los tribunales deben ser conscientes de que dichas medidas se pueden convertir en una limitación provisional del derecho de la parte afectada por la orden a la libre disposición de sus bienes y pueden menoscabar el valor de éstos. *Freeman v. Tribunal Superior*, 92 D.P.R. 1, 25(1965). Por tanto, el tribunal que atiende una solicitud de remedio provisional como el *injunction* preliminar debe "garantizar al reclamante pero no oprimir al demandado o causarle innecesarias dificultades…". *Id.*

Del mismo modo, habida cuenta de las repercusiones que una orden de *injunction* preliminar en garantía de una sentencia irroga en los derechos de la parte que la sufre, es menester proveer ciertas garantías procesales. A estos efectos, la Regla 56.2 de Procedimiento Civil le garantiza a la parte afectada el derecho a una notificación adecuada y a la celebración de una vista. 32 L.P.R.A. Ap. III. R. 56.2.

*Véase Bermúdez v. Tribunal Superior*, 97 D.P.R. 825 (1969). Ello, haciendo excepción de las instancias en las que el peticionario acredite que sufrirá perjuicios, daños o pérdidas irreparables de emitirse la notificación y celebrarse una vista. 32 L.P.R.A. Ap. III. R. 56.5.

Sin embargo, el derecho de una parte a presentar prueba a su favor en una vista de *injunction* preliminar se debe examinar a la luz de la naturaleza y propósitos de este tipo de vista. En este respecto, debemos puntualizar que el propósito de este tipo de vista es atender un incidente dentro de un pleito, conforme a los intereses de las partes y a los hechos del caso. Es decir, debido a que la determinación en torno a la concesión de un *injunction* preliminar no dispone de la controversia en sus méritos como ocurre en un juicio plenario, le corresponde al tribunal hacer un balance entre los intereses del peticionario y el daño que una orden de *injunction* preliminar puede causarle a la parte que la sufre. **En esta tarea, el tribunal posee discreción para limitar el tipo de evidencia que se admitirá en la vista, siempre que le provea a las partes una oportunidad justa y adecuada de presentar prueba y argumentar.**

Del mismo modo, conforme a la naturaleza de una orden provisional en aseguramiento de sentencia, la determinación de si el tribunal debe recibir prueba oral dependerá de los hechos sustantivos del caso y de la prueba documental que obra en el expediente. Por tanto, ante un planteamiento de

violación al derecho a presentar prueba en una vista de *injunction* preliminar bajo la Regla 56 de Procedimiento Civil, nos corresponde evaluar si las partes tuvieron una oportunidad adecuada de esbozar sus planteamientos y de presentar prueba. Además, a la luz de los hechos del caso y de los intereses de las partes, debemos examinar si el tribunal tuvo suficiente prueba ante su consideración para conceder un remedio provisional como es el *injunction* preliminar bajo la Regla 56 de Procedimiento Civil.

A la luz de lo anterior, nos corresponde determinar si la decisión del tribunal de instancia de no recibir prueba testifical en la vista de *injunction* preliminar bajo la Regla 56 de Procedimiento Civil vició de nulidad la orden de *injunction* dictada en el presente caso.

**IV**

Como indiqué, el Tribunal de Apelaciones revocó la orden de *injunction* preliminar emitida por el tribunal de instancia bajo el fundamento de que este último erró al celebrar una vista argumentativa en la cual no le permitió presentar cierta prueba testifical en la vista. Por su parte, AFE argumenta que el tribunal de instancia violentó su derecho al debido proceso de ley puesto que se negó a recibir la siguiente prueba: el testimonio del ingeniero Juan Riestra quien testificaría sobre los daños que AFE sufriría de paralizarse la obra; el testimonio del ingeniero Camilo Almeyda quien testificaría que la propiedad que AFE construye cumple con las servidumbres en equidad; y, finalmente, el

testimonio de las señoras Myriam Camacho González, Eneida Álvarez y Carmen Socorro Garay, damas afiliadas al Opus Dei, quienes relatarían el tiempo que han vivido o vivieron en la propiedad J-42 a los fines de establecer que la parte demandante incurrió en incuria al hacer valer la servidumbre en equidad frente a AFE.

A pesar de que el foro primario no escuchó la prueba testifical antes detallada, surge de los documentos que obran en el expediente que, al otorgar la orden de *injunction* preliminar que nos ocupa, el tribunal tuvo ante su consideración la siguiente prueba: dos certificaciones registrales que acreditan la inscripción en el Registro de la Propiedad de las servidumbres en equidad que gravan la propiedad J-42 y el tiempo durante el cual AFE ha sido dueña de dicha propiedad; varias fotografías sobre la construcción realizada en la propiedad J-42; documentos que acreditan las pérdidas económicas que AFE enfrentaría de paralizarse la construcción mediante una orden bajo la Regla 56; documentos que demuestran la magnitud y dimensiones de la obra realizada; documento que demuestra que, para el año 1996, la Asociación de Vecinos incluyó a la señora Eneida Álvarez (dama alegadamente afiliada a AFE) como residente de la propiedad J-42; y, declaraciones juradas de varias mujeres que han residido en la propiedad J-42 por varios años, incluyendo las declaraciones de las señoras Carmen Socorro Garay Rosa y Myriam Camacho González. Finalmente, el tribunal de instancia escuchó los argumentos de las partes en

torno a sus teorías y defensas e inspeccionó la propiedad en controversia.

Un examen de la prueba antes detallada demuestra que el tribunal de instancia no limitó la vista a una de carácter argumentativo.  Es decir, además de escuchar los argumentos de las partes, el foro primario recibió prueba documental de ambas partes en apoyo a sus alegaciones y defensas.  Del mismo modo, surge del expediente del presente caso que AFE pudo presentar prueba relacionada al testimonio que alegadamente sus testigos hubiesen prestado en la vista.

Primero, AFE presentó prueba documental sobre la proyección de pérdidas que sufriría si el tribunal paralizaba la obra, materia sobre la cual alegadamente hubiese versado el testimonio del ingeniero Riestra.  Segundo, en la inspección ocular celebrada el 31 de julio de 2006, el tribunal escuchó los argumentos y explicaciones del ingeniero Almeyda sobre las facilidades que AFE construye en la propiedad en controversia.[19]  Además, el tribunal de instancia inspeccionó la propiedad y examinó los planos de construcción que obran en autos.  En fin, a pesar de que en la vista de *injunction* preliminar el tribunal determinó que no recibiría el testimonio del ingeniero Almeyda, luego escuchó sus planteamientos en torno a la naturaleza de las facilidades construidas.

---

[19] Surge del Acta de la inspección ocular celebrada el 31 de julio de 2006 que el honorable juez examinó y discutió los planos del proyecto con los ingenieros de las partes y estos últimos argumentaron sus posturas.  Apéndice del Recurso de *certiorari* págs. 876-83.

Por otro lado, en la vista celebrada los días 20 y 21 de julio de 2006, el tribunal de instancia escuchó los argumentos de AFE sobre la alegada incuria de la Asociación y recibió prueba sobre dicha defensa. *Véase* transcripción de la vista, apéndice del recurso de *certiorari*, págs. 800-01. A estos efectos, AFE arguyó que es dueña de la propiedad J-42 desde el año 1983 y que en dicha residencia convive un grupo de mujeres solteras afiliadas a AFE desde el año 1987. En apoyo a dicha defensa, presentó un documento con el propósito de demostrar que, para el año 1996, la Asociación de Vecinos incluyó a la señora Eneida Álvarez (dama alegadamente afiliada a AFE) como residente de la propiedad J-42.

Del mismo modo, al emitir la orden de *injunction* preliminar, el tribunal contó con una serie de documentos presentados por AFE en apoyo a la defensa de incuria. A estos efectos, obra en el expediente del tribunal de instancia una moción de desestimación y sentencia sumaria presentada el 14 de diciembre de 2005, en la cual AFE esgrimió sus planteamientos sobre la alegada incuria de la Asociación de Vecinos.[20] Además, en apoyo a dicho planteamiento, AFE presentó las declaraciones juradas de varias mujeres que han vivido en la propiedad J-42. Entre éstas se encuentran las declaraciones juradas de las señoras Carmen Socorro Garay Rosa y Myriam Camacho González, a

---

[20] En dicha moción AFE arguyó que un grupo de entre 6 y 8 mujeres ha residido en la propiedad J-42 desde el año 1987 y que, entre el período de tiempo comprendido entre el año 1987 y 2005, la Asociación de Vecinos no cuestionó el uso de la vivienda por eso grupo de mujeres. *Véase* autos originales del tribunal de primera instancia, tomo núm. 3.

quienes AFE ofreció como testigos en la vista.[21] *Véase* autos originales del tribunal de primera instancia, tomo núm. 2.

En fin, surge del expediente del presente caso que, previo a la expedición de la orden de *injunction* preliminar, AFE tuvo la oportunidad de presentar prueba tendente a establecer que los demandantes-peticionarios incurrieron en incuria al impugnar la presencia de AFE en la residencia J-42.

En virtud de lo anterior, forzoso es concluir que el tribunal de instancia no privó a AFE de su derecho a la celebración de una vista a los fines de presentar prueba a su favor. Contrario a la determinación del Tribunal de Apelaciones, entiendo que AFE tuvo una oportunidad adecuada de presentar prueba en torno a la solicitud de *injunction* preliminar de la Asociación de Vecinos. Como indicamos, el tribunal de instancia recibió prueba documental sobre los asuntos que AFE arguye justificaban recibir prueba testifical. Es decir, tanto en la vista evidenciaria como en la inspección ocular, el foro primario recibió prueba sobre los daños económicos que AFE sufriría; sobre los detalles de la construcción; y sobre la alegada incuria de los demandantes-peticionarios. De igual forma, al expedir la

---

[21] En su declaración, la señora Socorro Garay indicó que vivió en la residencia J-42 desde el año 1987 hasta el 2005. Por su parte, la señora Camacho González indicó que comenzó a vivir en dicha propiedad en el año 1988. *Véanse* autos originales del tribunal de primera instancia, tomo núm. 2. También obran en el expediente del tribunal de primera instancia declaraciones juradas de las señoras Margarita Ivette Matos González, Ana María Riestra Carrión, María S. Carreras Miranda y Hannia Rivera Arévalo; damas que han vivido en la residencia J-42. *Id.*

orden de paralización, el tribunal de instancia contó con evidencia documental en torno al testimonio que las señoras Myriam Camacho González, Eneida Álvarez y Carmen Socorro Garay hubiesen prestado en la vista de remedio provisional en apoyo a la defensa de incuria levantada por AFE.

En segundo lugar, entiendo que el Tribunal de Primera Instancia tuvo suficiente prueba documental ante su consideración para examinar si procedía conceder el *injunction* preliminar solicitado por la Asociación de Vecinos. Como indiqué, al emitir la orden de *injunction* preliminar, el tribunal consideró prueba documental tendente a establecer que la propiedad de AFE está sujeta a las servidumbres que limitan el tipo de construcción que se puede realizar en la Urbanización Villa Caparra Sur a una casa residencia de una sola vivienda. Además, pudo constatar los detalles de la construcción a los fines de ponderar si la estructura podría contravenir las restricciones impuestas por las servidumbres en equidad que gravan la propiedad J-42. Del mismo modo, consideró abundante prueba en torno a la defensa de incuria levantada por AFE.

Con el beneficio de esta prueba, el tribunal de instancia determinó que existía probabilidad de que la Asociación de Vecinos prevaleciera en los méritos puesto que la magnitud de la obra indica que la propiedad construida podría ser una estructura de más de una vivienda y que incluso podría ser una estructura con fines institucionales. **A los únicos efectos de una orden de *injunction* preliminar**

**bajo la Regla 56 de Procedimiento Civil**, considero que el Tribunal de Primera Instancia no abusó de su discreción al resolver que la Asociación tenía una reclamación meritoria que justificaba conceder un remedio provisional en aseguramiento de sentencia.[22] *Véanse en modo análogo Misión Ind. P.R. v. J.P. y A.A.A., supra*, pág. 680 ("[l]a concesión de un *injunction* preliminar descansa en el ejercicio de la sana discreción judicial, la que se desplegará ponderando las necesidades y los intereses de todas las partes involucradas en la controversia".); *Sucn. Figueroa v. Hernández*, 72 D.P.R. 508, 514 (1951).

Por otro lado, luego de sopesar los intereses en controversia, el tribunal de instancia determinó que el daño que la Asociación de Vecinos sufriría ante una violación a las servidumbres en equidad de la Urbanización Villa Caparra Sur justificaba otorgar la orden de *injunction* preliminar. Al llegar a esta determinación, el tribunal tomó en cuenta nuestro pronunciamiento en *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 D.P.R. 346 (1986), caso en el que sostuvimos la validez de las servidumbres en equidad que gravan la Urbanización Villa Caparra Sur y expresamos que, para esa fecha, los cambios acaecidos en dicha urbanización no la habían modificado. En ausencia de abuso de discreción del tribunal al sopesar los intereses de las partes, este Tribunal no debe intervenir con dicha determinación.

---

[22] Esto, sin embargo, no condiciona la decisión final del caso que el tribunal pudiese tomar luego de considerarlo en los méritos.

En este momento es menester puntualizar nuestra discrepancia con algunos pronunciamientos de la opinión de conformidad. En primer lugar, la opinión de conformidad establece que la concesión de un *injunction* como el que el Tribunal de Primera Instancia emitió en este caso requiere, en virtud de la regla 57.3, la prestación de una fianza sin excepción. Así, concluye que no es de aplicación al presente caso el interdicto dispuesto en la regla 56 de Procedimiento Civil puesto que la regla 57 de dicho cuerpo normativo rige la concesión de un *injunction*. No puedo estar de acuerdo con dicha interpretación. La interpretación propuesta tiene el efecto de eviscerar de contenido la Regla 56.

Como indiqué, la Regla 56 de Procedimiento Civil asentó en nuestro ordenamiento el *injunction* como un mecanismo flexible que faculta a los tribunales a conceder este remedio acorde con las exigencias de la justicia sustancial y los intereses de las partes. En este caso, el Tribunal de Primera Instancia otorgó el *injunction* preliminar al amparo de dicha Regla por lo que, en ausencia de una justificación adecuada sobre la alegada inaplicabilidad de dicha Regla y sobre la supuesta necesidad de que la concesión de un *injunction* preliminar se rija por la Regla 57 de Procedimiento Civil, entiendo que no procede concluir, como lo hace la opinión de conformidad, que erró el foro primario al emitir el presente *injunction* al amparo de la regla 56 de dicho cuerpo normativo.

En vista de lo anterior, resolvería que actuó correctamente el Tribunal de Primera Instancia al conceder el *injunction* preliminar en este caso. Al igual que determinó dicho foro primario, procede conceder el *injunction* preliminar como remedio provisional sin la prestación de una fianza, pues nos encontramos ante un caso en el que surge de "documentos públicos o privados firmados ante una persona autorizada para administrar juramento, que la obligación es legalmente exigible". 32 L.P.R.A. Ap. III, R. 56.3.

En este respecto, la opinión de conformidad aduce que el foro primario erró al otorgar el *injunction* preliminar sin exigir la previa prestación de una fianza. Aun cuando reconoce que la Regla 56.3 vislumbra la concesión de un remedio provisional en aseguramiento de sentencia cuando obren en autos documentos públicos que acrediten la existencia de una obligación legalmente exigible, determina que la escritura pública que evidencia la existencia de la servidumbre en equidad y las certificaciones registrales del predio en controversia, no demuestran a cabalidad la violación clara y patente de la restricción invocada.

En apoyo a su contención, la opinión de conformidad invoca nuestros pronunciamientos en *Marty v. Ramírez,* 73 D.P.R. 165, (1952). En dicha ocasión reiteramos que, como norma general, para que se decrete un embargo sin prestación de fianza, es necesario que los documentos públicos le permitan al juez constar que la obligación existe y se puede reclamar. *Id.*, pág. 170. No obstante, dicha normativa no

tiene el alcance que la opinión de conformidad aduce. En primer término, en *Marty v. Ramírez,* nos enfrentamos a un embargo decretado por el foro primario sin prestación de fianza; no a una solicitud de *injunction* preliminar.  En el contexto de una solicitud de embargo, determinamos que no procedía otorgar el referido aseguramiento sin el pago de una fianza pues, a pesar de que se fundamentó la demanda en cobro de dinero en un documento firmado ante notario, de dicho documento no surgía el monto actual de la deuda *dineraria* reclamada.  Es decir, el documento firmado ante notario no le permitía al juzgador discernir si la deuda había sido extinguida en todo o en parte o si la misma era exigible. *Véase además Roig v. Landrau*, 29 D.P.R. 315 (1921)(denegando una solicitud de embargo ante el hecho que el contrato elevado a escritura pública no daba base para determinar el monto exigible, si alguno, de la deuda).

Contrario a la situación a la que nos enfrentamos en *Marty v. Ramírez, supra*, en el presente caso existen documentos públicos auténticos que acreditan la existencia de la servidumbre en equidad que pesa sobre la Urbanización Villa Caparra.  Así, mientras en *Marty v. Ramírez* no existía certeza sobre la vigencia de la deuda, en este caso tanto la escritura pública de la servidumbre, como las certificaciones registrales que obran en autos demuestran que existe una obligación legalmente exigible oponible a la Asociación de Fomento Educativo.

Habida cuenta de lo anterior y contrario a la posición de la opinión de conformidad, entiendo que el remedio de *injunction* sin la previa prestación de fianza al amparo de la Regla 56 de Procedimiento Civil no está sujeto a que la Asociación de Vecinos pruebe la violación a la servidumbre en equidad. Considero que en el presente caso obra prueba fehaciente y auténtica sobre la existencia de una obligación legal que puede reclamarse por la Asociación de Vecinos y, por tanto, procede conceder el remedio provisional de *injunction* ante una construcción que amenaza dicha servidumbre.

En fin, carece de sentido requerirle a la Asociación de Vecinos que pruebe su reclamación en los méritos, es decir, que pruebe la alegada violación a la servidumbre, asunto que le compete resolver al foro primario luego de un juicio plenario. Para todos los efectos prácticos, al confirmar la sentencia del Tribunal de Apelaciones que dejó sin efecto el *injunction* concedido en el presente caso, este Tribunal priva a los peticionarios de un remedio oportuno y adecuado. Aun cuando nada impide que los peticionarios presenten una nueva solicitud de *injunction*, el trámite de una nueva vista evidenciaria con toda probabilidad le permitirá al Opus Dei terminar la construcción de la residencia en controversia, convirtiendo el remedio interdictal en académico.

En conclusión, en vista de que una orden de *injunction* preliminar bajo la Regla 56 de Procedimiento Civil concede un remedio provisional y no dispone de la controversia en los

méritos, entiendo que no erró al tribunal de instancia al determinar que los hechos del caso no requerían recibir prueba oral o testifical. Contrario a lo resuelto por el Tribunal de Apelaciones, soy del criterio que el Tribunal de Primera Instancia no abusó de su discreción al determinar que contaba con suficiente prueba documental para dilucidar un aspecto interlocutorio en este pleito.[23]

Por los fundamentos antes expuestos revocaría la sentencia del Tribunal de Apelaciones y reinstalaría la orden de *injunction* preliminar dictada por el Tribunal de Primera Instancia.


Anabelle Rodríguez Rodríguez
Juez Asociada

---

[23] Habida cuenta de que lo anterior dispone de la controversia que nos ocupa, es innecesario expresarnos sobre la validez de la servidumbre en equidad de la Urbanización Villa Caparra y sobre las restricciones que aplican a la propiedad J-42. En esta etapa de los procedimientos no nos corresponde determinar, como las partes nos piden, si las servidumbres en equidad de la Urbanización restringen la construcción de viviendas a residencias de una sola vivienda, o si, por el contrario, la servidumbre exige que se construyan residencias para una sola familia. El 2 de agosto de 2007, la demandada-recurrida, Asociación de Fomento Educativo, presentó ante nuestra consideración una moción en la cual alegó que las instancias del Registro de la Propiedad reflejan que la servidumbre en equidad que grava la Urbanización Villa Caparra no restringe la construcción en dicho lugar a una casa residencia de una familia, sino que el término *familia* sólo aparece en la escritura de venta de la propiedad J-42. La demandante-peticionaria, Asociación de Vecinos, presentó una réplica a dicha moción en la que argumentó que la restricción de vivienda para una sola familia es una servidumbre en equidad que grava la propiedad J-42 y que obliga a AFE. El Tribunal de Instancia no ha pasado juicio sobre este asunto que versa sobre los méritos del presente caso. Le corresponde a dicho foro dirimir este aspecto de la controversia que no afecta la determinación preliminar a la que hoy llegamos sobre la procedencia de un *injunction* preliminar en aseguramiento de sentencia.